REID COLLINS & TSAI LLP
Lisa S. Tsai, CA Bar No. 224198
(ltsai@rctlegal.com)
Gregory S. Schwegmann (*pro hac vice* to be filed)
(gschwegmann@rctlegal.com)
1301 S. Capital of Texas Hwy
Suite C300
Austin Texas, 78746
Telephone: (512) 647-6100
Facsimile: (512) 647-6129

*Attorneys for Plaintiff ChinaCast Education Corporation*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHINACAST EDUCATION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CHEN ZHOU GUO AND HUAN WANG,<br><br>Defendants. | Case No.: 15-5475<br><br>**COMPLAINT FOR:**<br><br>**(1) UNJUST ENRICHMENT**<br>**(2) CONVERSION**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, ChinaCast Education Corporation ("ChinaCast" or the "Company"), by and through the undersigned counsel, hereby sets forth its claims against Defendants, Chen Zhou Guo and Huan Wang, as follows:

## <u>NATURE OF THE CASE</u>

1. ChinaCast brings this action to recover (i) the damages it suffered as a result of the Defendants' theft of over 2.4 million shares of Company stock; and (ii) the proceeds of Defendants' wrongful sale of the stolen shares. In June 2010, Chen

Zhou Guo, several corrupt members of ChinaCast's former executive management team, and a "front-man" named Wu Shi Xin conspired to steal over 3.7 million shares of ChinaCast stock, worth approximately $29.3 million, from the Company. Defendants wrongfully acquired 2,482,758 million shares of ChinaCast stock as a result of this scheme. Approximately six months later, Defendants were unjustly enriched by selling all of the ChinaCast stock that they wrongfully acquired on the open market for a total consideration of $17,130,740.

2. Through this action, ChinaCast seeks to hold Defendants liable for the total value of the stock they stole from the Company at the time of the theft. Moreover, and at a minimum, ChinaCast seeks the disgorgement of the total consideration each Defendant unjustly received from the sale of the 2,482,758 shares of ChinaCast stock they wrongfully acquired from the Company.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the parties.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because all defendants reside in this district and are residents of the State of California.

## THE PARTIES

**A. Plaintiff**

5. ChinaCast is incorporated under the laws of Delaware. Its principal place of business is Room 701A, Building A Golden Eagle Mansion, 80 Hanxiao, Pudong Road, Shanghai F4 200437. From 2007 until it was delisted in June 2012, ChinaCast stock was traded on the NASDAQ (ticker symbol: CAST).

**B. Defendants**

6. Chen Zhou Guo is domiciled in the State of California and resides at 20909 Fuerte Dr., Walnut, California 91789-2006 and in Shanghai, China.

7. Huan Wang, Chen Zhou Guo's wife, is domiciled in the State of California, and also resides at 20909 Fuerte Dr., Walnut, California 91789-2006.

**C. Other Relevant Parties**

8. Motivation International Investment Co. Ltd. ("Motivation") is a limited liability company formed under the laws of the British Virgin Islands and is wholly owned and controlled by Defendants. At all times relevant to this Complaint, Chen Zhou Guo owned 60% Motivation and Huan Wang owned the remaining 40%.

9. Ron Chan ("Chan") was ChinaCast's Chief Executive Officer and Chairman of the Board during the time period relevant to this Complaint. From at least 2008 until his termination in March 2012, Chan, together with the Company's former Chief Financial Officer, Tony Sena ("Sena"), former Chief Accounting

Officer, Jim Ma, and former President, Jiang Xiangyuan, among other members of the ChinaCast's top management (collectively, "Former Management"), looted the Company out of hundreds of millions of dollars through numerous fraudulent schemes and the outright theft of the Company's stock, cash, and assets. Former Management covered up their pervasive wrongdoing for years and effectively avoided any meaningful board oversight by packing the Company's board of directors and audit committee with directors they controlled.

10. Ned Sherwood and Daniel Tsueng (collectively, the "Innocent Independent Directors") were directors of ChinaCast at all times relevant to this Complaint. The Innocent Independent Directors had no knowledge of any wrongdoing at the Company until after Former Management was terminated in 2012 and new management performed a full investigation into the Company's finances. Moreover, Former Management's efforts to cover-up their wrongdoing effectively prevented the Innocent Independent Directors from discovering the full extent of Former Management's wrongdoing until many months after they were removed from office.

## FACTUAL ALLEGATIONS

### A. Company background and Former Management's wrongdoing

11. ChinaCast was formed in 2003 as a publicly-listed special purpose acquisition company called Great Wall Acquisition Corporation ("Great Wall").

Great Wall had no business operations of its own. Its sole purpose was to acquire an operating business with its primary operations in the People's Republic of China ("PRC").

12. Great Wall acquired ChinaCast through a 100% public tender offer in 2007, which it completed through a series of transactions. Afterward, Great Wall changed its name to ChinaCast Education Corporation, and began trading on the NASDAQ in October 2007.

13. Most of the Company's management and board members, and all of its revenue-producing operating entities, were based in the PRC. (Various holding and operating subsidiaries were formed under the laws of different jurisdictions, including the British Virgin Islands, Hong Kong, and the PRC.) At the outset, ChinaCast had a profitable business model and excellent business prospects as a leading provider of post-secondary and e-learning services in China.

14. Indeed from 2007 through early 2012, ChinaCast appeared to be a legitimate company. In reality, as the Company later discovered, Former Management had been looting ChinaCast's bank accounts for their own benefit and the benefit of their accomplices, including Defendants, for years through various schemes.

15. The massive theft and wrongdoing going on at the Company was finally discovered in late 2012 after a proxy battle led to the election of a majority of truly

independent directors. Former Management had stacked the previous board with members that they could control and who acted to protect Former Management from the level of board scrutiny that would have revealed their wrongdoing. After the new board assumed control in January of 2012, conditions at ChinaCast changed dramatically.

16. Chan, who had released a public letter to shareholders expressing his extreme displeasure about the new composition of ChinaCast's board, spent weeks obstructing the Company's auditor, Deloitte Touche Tohmatsu CPA, Ltd. ("Deloitte"), from completing its audit for 2011. As a result of Chan's obstruction, the Company missed the deadline to file its Form 10-K for 2011.

17. Shortly thereafter, and as a result of his purposeful obstruction of the Company's audit, on March 26, 2012, the Board of Directors voted to remove Chan as CEO. Chan, however, unlawfully resisted his termination by entering company offices and stealing and/or destroying Company property, including the vast majority of the Company's financial records, the corporate seals needed to conduct business in China (called "chops"), and the Company computers, servers, and files. Upon discovering the theft, the board immediately began investigating potential wrongdoing at the Company. Nevertheless, Chan's theft of the Company's financial records and chops, significantly delayed the Company's efforts to gather the information necessary for their investigation for months.

18. Only after acquiring new chops from the relevant Chinese authorities was the Company finally able to obtain the bank records that revealed Former Management's and Defendants' wrongdoing, including the true nature of the stock transaction that forms the basis of this Complaint.

**B. Chen Zhou Guo and Huan Wang steal 2.48 million shares of ChinaCast stock through Motivation.**

19. In April 2010, Chan and Former Management purportedly negotiated a deal to sell 3,735,734 shares of restricted ChinaCast stock to two BVI companies – Motivation, a company owned and controlled by Defendants, and China South Investments Limited ("China South"), a company formed and controlled by Chan (a fact that Chan never disclosed). Although several early drafts of the stock purchase agreement listed Motivation as the purchaser, the parties ultimately decided to structure the transaction so that a front-man, Wu Shi Xin, would "purchase" the shares and then have the Company issue the shares to Motivation and China South as his nominees.

20. In accordance with this plan, on April 29, 2010, Former Management caused ChinaCast to enter into a share purchase agreement to sell 3,735,734 million ChinaCast shares for approximately $29.3 million to Wu Shi Xin. On the same day, and in conjunction with the share purchase agreement, Wu Shi Xin sent the Company a letter naming Motivation and China South as his nominees to receive the shares.

21. The stock purchase transaction allegedly closed on June 2, 2010, and on that day, ChinaCast's former CFO, Sena, instructed the Company's transfer agent to issue a total of 3,735,734 to Motivation and China South. Also on June 2, 2010, upon Sena's representation that the Company had received payment for the shares, ChinaCast's counsel issued an opinion letter to the transfer agent, stating that the shares would be "fully paid" when issued.

22. On June 3, 2010, upon receipt of the Sena's instruction letter and the opinion of counsel, the transfer agent transferred 2,482,758 ChinaCast shares to Motivation and 1,252,976 to China South as the nominees of Wu Shi Xin.

23. The Company, however, never received payment for the shares. Rather, Former Management fabricated a ruse to create the appearance of money passing through ChinaCast's bank account. Specifically, they arranged for a series of several round trip deposits from unrelated third-parties into and out of the Company's accounts. Each time funds were deposited, the bank would generate a "pay-in" slip as a record of the transaction. This process was repeated until the sum of the pay-in slips equaled the total amount due for the shares. The money was then withdrawn and returned on the same day to the same unrelated third-party that had provided it, meaning the total net payment of funds to ChinaCast was zero.

24. As active participants in the scheme, Defendants knew that the Company never received any consideration for the 2,482,758 shares they had

acquired through Motivation. Defendants certainly knew that they never paid the approximately $19.5 million the Company was owed for the shares pursuant to the share purchase agreement.

**C. Chen Zhou Guo and Huan Wang unjustly profited from the stock they stole from the Company.**

25. Six months later, in December 2010, Chen Zhuo Guo engaged Credit Suisse to broker the sale of the 2,482,758 shares of ChinaCast stock that he and Huan Wang had wrongfully acquired through the transfer to Motivation. On December 22, 2010, Chen Zhuo Gou signed a “Rule 144 Non-Affiliate Representation Letter” on behalf of Motivation addressed to Credit Suisse Securities (USA) LLC, One Madison Avenue, New York, New York 10010-3629. The letter falsely stated that the 2,482,758 shares of ChinaCast stock that Motivation intended to sell “have been paid for in full for a period of at least six (6) months.”

26. On or about December 31, 2010, Motivation sold 2,482,758 shares of ChinaCast stock (i.e., all of the shares that had been issued to Motivation on June 3, 2010) for a price of $6.90 per share. Credit Suisse handled the sale and after its completion, wired the total proceeds of $17,130,740 from the U.S. into an account held at in the name of Motivation at HSBC Hong Kong, account #2W4W1. Thus, as the 60% owner of Motivation, Chen Zhou Guo received $10,278,444 as a result of the stock sale, and as the 40% owner, Huan Wang received $6,852,292.

27. Upon information and belief, Defendants subsequently transferred the proceeds of the stock sale to their personal bank accounts and used such proceeds to purchase, among other things, the house in which they reside at 20909 Fuerte Dr., Walnut, California 91789-2006.

**D. Chen and Wang are alter egos of Motivation**

28. Motivation is wholly owned by Chen Zhuo Guo and his wife, Huan Wang. Chen Zhuo Guo owns 60% of the company, and Huan Wang owns the remaining 40%.

29. Upon information and belief, Defendants formed Motivation for the purpose of participating in the fraudulent stock purchase transaction described herein and in an attempt to wrongfully use the corporate form to protect them from any liability associated with their profiting from the sale of 2,482,758 shares of stolen ChinaCast stock.

## ALLEGATIONS CONCERNING STATUTES OF LIMITATIONS

30. The Company did not discover that Defendants stole 2,482,758 shares of ChinaCast stock through Motivation with the knowing assistance of Former Management, and unjustly profited from the sale of such shares, until December 2012, at the earliest. Due to Chan's theft and/or destruction of the Company's financial records and corporate seals, the Company did not have, and could not

obtain, the financial documentation necessary to discover the true nature of the stock transaction at issue until late 2012.

31. Moreover, the Company did not, and could not have discovered, the nature of Defendants' involvement in the transaction until early 2013 when it recovered a database containing the email accounts of several members of ChinaCast's corrupt former management.

32. As such, and at a minimum, the statute of limitations for ChinaCast to assert claims against each Defendants is tolled by the doctrine of equitable tolling through December 2012, the earliest possible date the Company could have discovered its claims against Defendants with the exercise of reasonable diligence.

**COUNT ONE**
**<u>Unjust Enrichment</u>**

33. ChinaCast repeats and re-alleges the allegations set forth in all preceding paragraphs as if fully set forth here.

34. As the sole owners of Motivation, and as a result of the June 3, 2010 stock transaction with ChinaCast, Defendants received a benefit from the Company in the form of their acquisition of 2,482,758 shares of ChinaCast stock.

35. ChinaCast, however, never received payment for the 2,482,758 shares that it issued to Defendants through their wholly owned company, Motivation. Moreover, Defendants knew that ChinaCast was never paid for the shares. As such,

Defendants knowingly retained possession of shares that had effectively been stolen from ChinaCast.

36. On December 31, 2010, Defendants sold the 2,482,758 shares they had stolen from ChinaCast for a total consideration of $17,130,740, which was transferred from the U.S. into an account held at in the name of Motivation at HSBC Hong Kong, account #2W4W1, and retained by Defendants.

37. Thus, as the 60% owner of Motivation, Chen Zhou Guo was unjustly enriched in the amount of at least $10,278,444 as a result of Defendants' sale of the stolen shares. Similarly, as the 40% owner Motivation, Huan Wang was unjustly enriched in the amount of at least $6,852,292 as a result of Defendants' sale of the stolen shares. Defendants' retention of the amounts received from their sale of the stock stolen from ChinaCast would be inequitable.

**COUNT TWO**
**<u>Conversion</u>**

38. ChinaCast repeats and re-alleges the allegations set forth in all preceding paragraphs as if fully set forth here.

39. On June 3, 2010, ChinaCast's transfer agent transferred 2,482,758 shares of ChinaCast stock to Defendants. The transfer agent transferred the stock to Defendants based upon the false representation that the Company had received payment for the shares.

40. The Company, however, never received payment. Because the Company was never paid for the shares, ChinaCast remained the rightful owner of the stock that was transferred to Defendants.

41. Defendants converted the shares by wrongfully taking possession without ever having paid for them. Six months later, Defendants further converted the shares by wrongfully selling the stolen shares on the open market.

42. As a direct and proximate result of Defendants' conversion or theft of the 2,482,758 shares of Company stock, ChinaCast was harmed in an amount to be proven at trial but not less than $19,489,650, the value of the shares at the time Defendants wrongfully acquired them.

**DEMAND FOR JURY**

Plaintiff demands a jury trial and tenders the appropriate fee with this Petition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that Defendants Chen Zhou Guo and Huan Wang be cited to appear and answer herein, and that upon trial of this cause, judgment be entered in Plaintiff's favor, and against Defendants for the following:

a. Awarding Plaintiff damages in an amount to be proven at trial but not less than $19,489,650 for the conversion of 2,482,758 shares of Company stock;

b. Ordering Defendants to disgorge the proceeds of the sale of stock they wrongfully acquired from the Company, an amount to be proven at trial but not less than $17,130,740;

c. Awarding Plaintiff prejudgment and post-judgment interest on the foregoing amounts at the maximum rate permitted by law or equity;

d. Awarding Plaintiff reasonable attorneys' fees and costs incurred in the prosecution of this action to the extent allowed by law;

e. Awarding such other and further relief as the Court determines is just and proper.

**Dated: July 20, 2015**

**REID COLLINS AND TSAI LLP**

/s/ *Lisa S. Tsai*
Lisa S. Tsai

*Attorney for ChinaCast Education Corporation*