UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 2:15-cv-05475-AB-E | Date: | December 28, 2018 |

| | |
|---|---|
| Title: | *Chinacast Education Corporation v. Chen Zhou Guo, et al.* |

| | |
|---|---|
| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**      **[In Chambers] ORDER RE: MOTIONS IN LIMINE**

## I.    INTRODUCTION

Before the Court are Plaintiff Chinacast Education Corporation's ("Plaintiff" or "Chinacast") Motion in Limine 1 and 2. Defendants Chen Zhuoguo and Huan Wang (collectively, "Defendants") opposed both motions. The Court heard oral argument on the motions on December 21, 2018 and took the matter under submission. Having carefully reviewed the parties' submissions and considered the arguments presented during oral argument, the Court rules as follows.

## II.    BACKGROUND

The Court will provide only a brief summary of the background of this case, which has been set forth at length in the parties' motions and in the Court's September 7, 2018 Order Denying Defendants' Motion for Summary Judgment. (*See* Dkt. No. 96 (hereinafter, "MSJ Order").)

Plaintiff Chinacast brought this action in connection with the transfer of 2,482,758

shares of Chinacast stock to Motivation International Investment Company ("Motivation")—a company owned and controlled by Defendants Chen and Wang, who are married to each other. (Dkt. No. 114, Joint Statement of the Case ("Joint Statement") at 2.)   It is undisputed that Motivation received Chinacast stock and that Motivation sold the stock in December 2010 for more than $17 million. (*Id.*)

Chinacast contends that Defendants Chen and Wang and their company Motivation were not entitled to receive the Chinacast stock because it was never paid for and that Chinacast suffered economic harm because the Defendants benefitted by receiving and selling the stock at the expense to Chinacast. (*Id.*)

Defendants Chen and Wang contend that Motivation was entitled to receive the stock and keep the proceeds of the sale of the stock because Chinacast received consideration from Defendant Chen in return for the Chinacast stock. (*Id.*) Specifically, Defendants assert that Chinacast received from Defendant Chen an interest in an entity that owned a university known as Hubei Industrial University Business College ("HIUBC"). (*Id.*) Wuhan Jiyang Education Investment Co., Ltd. ("Jiyang") is a company that owns and operates HIUBC. (Dkt. No. 116, Proposed Final Pretrial Conference Order ("PFPTCO") at 5.)

The parties' positions are based on three agreements. The first two agreements allegedly arise out negotiations between Defendant Chen and Ron Chan ("Chan"), the former Chief Executive Officer of Chinacast, who was terminated by Chinacast on March 26, 2012. (PFPTCO at 4; MSJ Order at 2-4.) Chen and Chan arranged for Jiyang—a company that Defendant Chen had a 60% interest in and which owns and operates HIUBC—to be sold to Shanghai Rubao Information Technology Co., Ltd. ("Rubao")—a Chinese corporation that Defendant Chen believed to be a subsidiary of Chinacast. (MSJ Order at 2-4.) In the negotiations for the sale, Defendant Chen allegedly accepted Chan's counteroffer of RNB 180 million. (MSJ Order at 3.) According to Defendant Chen, the parties agreed that a portion of the purchase price—RNB 60 million—would be paid in cash, and the remainder—RNB 120 million—would be paid in Chinacast stock. (MSJ Order at 3.)

Defendants' position is that the agreement between Defendant Chen and Chan (on behalf of Chinacast) is embodied in two separate written agreements: (1) the March 25, 2010 share transfer agreement, which provides that Rubao purchased HIUBC indirectly by acquiring a 100% interest in Jiyang for RNB 60 million ("the March 25, 2010 Share Transfer Agreement") and (2) a second agreement between Chan (on behalf of Chinacast) and Defendant Chen and the other two owners of Jiyang, Li Xin and Xu Jianlin, that Chinacast would transfer RMB 120 million in stock to Motivation ("the Second Agreement"). (PFPTCO at 4; MSJ Order at 2-4.)

Defendant Chen claims to have lost the Second Agreement when he moved from Hubei, China to the United States. (MSJ Order at 2, 4.) Defendant Chen claims he obtained guarantees for this stock, one from Sunway Technology Limited ("Sunway"), dated April 12, 2010, and one from Chan personally, dated April 13, 2010. (Dkt. No. 117-1, Declaration of Brian Neach ("Neach Decl.") ¶¶ 3-4, Exs. 2-3.) Both guaranteed the full RMB 180 million, and Defendants argue these guarantees tend to corroborate the existence of the second contract. (*Id.*; Dkt. No. 117 (hereinafter, "Opp'n to MIL No. 1") at 4, 8.)

On April 29, 2010, Chinacast entered into a stock purchase agreement with Wintown Enterprises Limited ("Wintown"), which had previously acquired Rubao and became the holding company of HIUBC and Jiyang, through Wu Shi Xin, in which Wu would purchase 3,735,734 shares of Chinacast stock for $29,325,511.90 ("the April 29, 2010 Stock Purchase Agreement"). (MSJ Order at 3-4.) In connection with the April 29, 2010 Stock Purchase Agreement, Wu named Motivation as one of two nominees to receive the shares purchased from Chinacast. (MSJ Order at 5.) On June 3, 2010, Chinacast subsequently issued 2,482,758 shares to Motivation. The stock certificate was sent to Motivation's Hong Kong address, but Chinacast claims it never received payment for these shares. (*Id.*)

In this action, Plaintiff Chinacast intends to pursue three causes of action against Defendants: (1) unjust enrichment; (2) conversion; and (3) money had and received. (*See* PFPTCO at 5.) Defendants plan to pursue eight[1] affirmative defenses, which include the following: (1) California Code of Civil Procedure 361 (California's borrowing statute); (2) statute of limitations; (3) waiver; (4) laches; (5) ratification; (6) consent; (7) estoppel; and (8) unclean hands. (PFPTCO at 10.)

## III.    LEGAL STANDARD

The Court's power to entertain and rule on motions in limine stems from "the court's inherent power to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). But while district courts have broad discretion in ruling on motions in limine, such motions should not be used as instruments of summary judgment or dismissal. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, Case No. CV 12-0329 AG (JPRx), 2014 WL 8096334, *5 (C.D. Cal. Apr. 21, 2014) ("It is not proper to use motions in limine as a substitute for summary judgment."); *Mixed Chicks LLC v. Sally Beauty Supply LLC*, 879 F. Supp. 2d 1093, 1094 (C.D. Cal. 2012) (providing examples of proper and improper motions in limine); *Engman v. City of Ontario*, No. CV

---

[1] The parties' Proposed Final Pretrial Conference Order provides eight affirmative defenses, not nine, because the parties omitted the first affirmative defense. (*See* PFPTCO at 10.)

10-0284 CAS (PLAx), 2011 WL 2463178, *9 (C.D. Cal. June 20, 2011) ("Motions in
limine are an inappropriate means to resolve factual . . . disputes or weigh evidence.").

Furthermore, "[t]o exclude evidence on a motion in limine 'the evidence must be
inadmissible on all potential grounds.'" *Goodman v. Las Vegas Metro. Police Dep't*, 963
F. Supp. 2d 1036, 1047 (D. Nev. 2013), *rev'd in part on other grounds*, 613 F. App'x 610
(9th Cir. 2015) (citation omitted). "Unless evidence meets this high standard, evidentiary
rulings should be deferred until trial so that questions of foundation, relevancy and
potential prejudice may be resolved in proper context." *Id.* (citation omitted). For this
reason, motions in limine to exclude evidence are appropriately granted concerning
specific objections to specific evidence. *See Colton Crane Co. v. Terex Cranes
Wilmington, Inc.*, Case No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, *1 (C.D. Cal.
May 19, 2010). Motions in limine to exclude broad categories of evidence are usually
improper "as the court is almost always better situated to rule on evidentiary issues in
their factual context during trial." *Id.*

Finally, a court's rulings on motions in limine are inherently preliminary and "are
not binding on the trial judge [who] may always change his mind during the course of
trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Even if a court initially
denies or grants a motion in limine, "a court is almost always better situated during the
actual trial to assess the value and utility of evidence." *Colton Crane Co.*, 2010 WL
2035800, at *1 (citation omitted).

## IV.    MOTIONS IN LIMINE

### A.    Plaintiff's Motion in Limine No. 1 (Dkt. No. 105) is <u>GRANTED</u> in part and <u>DENIED</u> in part

Plaintiff seeks to exclude argument or evidence that Plaintiff received Chinacast
stock as payment for transferring their interest in HIUBC according to an alleged written
contract—i.e., the Second Agreement—that Plaintiff claims was never produced.
Specifically, Plaintiff asks the Court to prohibit Defendants from either (1) offering
evidence about the existence of the alleged contract and its terms or (2) arguing that this
"mythical" contract constitutes a defense to Chinacast's claims. Plaintiff moves to
exclude this evidence under Federal Rule of Evidence 1002 (the best evidence rule), 401,
and 403, as well as under California Code of Civil Procedure section 1856 (the parol
evidence rule).

Defendants respond that the motion should be denied on the grounds that (1)
Plaintiff's motion improperly requests that the Court weigh evidence and determine the
legal sufficiency of Defendants' claims in a motion in limine; (2) Plaintiff fails to identify
specific evidence it seeks to exclude; (3) the acquisition of HIUBC is relevant; and (4)

Plaintiff's best evidence argument fails.

The Court agrees with Defendants' position that the issue of whether Defendants received stock in exchange for an interest in HIUBC is a factual dispute that cannot be resolved by motion in limine. Indeed, in the Court's September 7, 2018 Order Denying Defendants' Motion for Summary Judgment, the Court found "a genuine issue of material fact exists as to whether the share transfer at issue was done as partial payment for HIUBC." (MSJ Order at 16.)

Here, Plaintiff has identified specific evidence it seeks to exclude—a specific contract, which Defendants intend to rely on at trial but has not been produced in discovery. The contract is relevant because it contradicts the terms of the April 29, 2010 Stock Purchase Agreement and the March 25, 2010 Share Transfer Agreement and allegedly entitled Defendants to retain the 2,482,758 shares of Chinacast stock that Motivation received in exchange for Defendants transferring their interests in HIUBC to a company other than Chinacast. (*See* PFPTCO at 21.)

The Court finds that the best evidence rule does not bar all testimony regarding HIUBC simply because Defendant Chen lost the Second Agreement. Generally, under the best evidence rule, "[a]n original writing . . . is required in order to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise." Fed. R. Evid. 1002. Federal Rule of Evidence 1004 provides, however, that other evidence may be used to prove the contents of a writing where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004(a). "Unless someone testifies that he or she personally destroyed or witnessed the destruction of a document, such proof will ordinarily be circumstantial." *Kaufman v. Warner Bros. Entm't Inc.*, No. CV-16-02248-PHX-JAT, 2018 WL 4351292, at *4 (D. Ariz. Sept. 12, 2018) (quoting *United States v. McGaughey*, 977 F.2d 1067, 1071 (7th Cir. 1992)).

"[A] reasonable and diligent search is typically the only way to establish that a document has been lost or is unavailable." *Id.* (quoting *Medina v. Multaler, Inc.*, No. CV 06-00107 MMM (AJWx), 2007 WL 5124009, at *2 (C.D. Cal. Feb. 7, 2007)). "The required intensity of a search necessary to constitute sufficient circumstantial evidence is at its highest where a document is central to a case." *Id.* (citing *Medina*, 2007 WL 5124009, at *3). The determination of whether a search is sufficient is within the trial court's discretion. *Id.* "The proponent of the evidence must show that it is more likely than not that an original was lost or destroyed." *Id.*

For the best evidence rule to apply, Defendants must seek to prove the *contents* of the Second Agreement. Here, Defendants seek to have Defendant Chen testify regarding the existence of the document based on his personal knowledge, not the contents. To the extent Defendants seek to introduce the substance of the contract, Federal Rule of

Evidence 1002 bars any evidence regarding the substance of the contract unless
Defendants can show that "all originals are lost or destroyed, and not by the proponent
acting in bad faith." Fed. R. Evid. 1004; *see Keshe v. CVS Pharmacy Inc.*, No.
214CV08418CASMANX, 2016 WL 1367702, at *2 n.2 (C.D. Cal. Apr. 5, 2016), *aff'd
sub nom. Keshe v. CVS Pharmacy*, 711 F. App'x 396 (9th Cir. 2017) ("Because [the
proponent of evidence] attempts to establish not only the existence, but the contents of
the note, the Best Evidence Rule applies."); *U.S. v. Diaz-Lopez*, 625 F.3d 1198, 1201-02
(9th Cir. 2010) ("[I]n writings the smallest variation in words may be of importance . . . .
Thus, the rule applies only to the terms of the document, and not to any other facts about
the document. In other words, the rule . . . does not apply to exclude testimony which
concerns the document without aiming to establish its terms" (citation omitted)).

The Court is inclined to grant the motion as to the *substance* of the Second
Agreement under the best evidence rule. Defendants argue that Rule 1004 exempts the
Second Agreement from the best evidence rule because "ChinaCast has provided no
evidence of 'bad faith' on the part of Defendant Chen in not having the document.
(Opp'n to MIL No. 1 at 8.) However, [t]he *proponent* of the evidence must show that it is
more likely than not that an original was lost or destroyed." *Kaufman*, 2018 WL
4351292, *2 (emphasis added). Therefore, as the proponent of the Second Agreement,
Defendants have the burden, not Plaintiff, to present evidence showing the absence of
bad faith. The Court finds Defendants have failed to meet their burden because
Defendants have presented no evidence showing the absence of bad faith besides a self-
serving statement that it was lost during the move from China to the United States.

To the extent Plaintiff seeks to exclude evidence of Chan and Defendant Chen's
negotiation history under the parol evidence rule the motion is **GRANTED without
prejudice**. Pursuant to California's version of the parol evidence rule, extrinsic evidence
is inadmissible to "add to, detract from, or vary the terms of a written contract." *Pac.
Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968).
Courts consider extrinsic evidence to determine whether it is being offered to
impermissibly alter the terms of a written agreement. *Id*. at 39-40. However, the
evidence only becomes admissible if its proponent offers the evidence to support an
interpretation of the contract to which the contract is reasonably susceptible. *Id*. at 40.

The March 25, 2010 Share Transfer Agreement is a written agreement that
contains an integration clause, which provides: "this Contract and its exhibits shall
constitute an indivisible entirety, and shall have the same legal effect. This Contract and
its exhibits shall constitute the entire agreement between the parties, and supersede all
correspondence, statements, agreements, or other documents between the parties prior to
the execution of this Contract." (Dkt. No. 105-1, Declaration of Gregory S. Schwegmann
("Schwegmann Decl.") ¶ 3, Ex. 2, at 13.) Defendants therefore may not use extrinsic
evidence to alter the March 25, 2010 Share Transfer Agreement terms. Defendants have
yet to explain how they plan to use evidence of the March 25, 2010 Share Transfer

#

Agreement's negotiation history. While Defendants may use such extrinsic evidence to support a reading of the March 25, 2010 Share Transfer Agreement to which the contract is reasonably susceptible, Defendants must first present the evidence to the Court and explain how it supports a reasonable interpretation of the contract. Defendants will be required to make this showing outside the presence of the jury.   Until Defendants do so, evidence of the March 25, 2010 Share Transfer Agreement's prior negotiation history will be excluded.

Accordingly, Plaintiff's Motion in Limine No. 1 is **GRANTED in part and DENIED in part.**

> **B.    Plaintiff's Motion in Limine No. 2 to Exclude Witnesses Not Timely Disclosed in Discovery (Dkt. No. 106) is GRANTED in part and DENIED in part.**

Plaintiff's second motion in limine seeks to bar Plaintiff from calling six witnesses that Defendants did not timely disclose during discovery. On December 19, 2018 at 6:56 p.m.—one business day before the final pretrial conference—Defendants submitted an amended witness list narrowing the number of witnesses at issue in this motion to three witnesses. These witnesses are: (1) Shaoying You; (2) Wan Ming; and (3) Xu Jianlin.

These witnesses are required initial disclosures under Federal Rule of Civil Procedure 26(a). Defendants served their initial disclosures on May 31, 2016. (Schwegmann Decl. ¶ 2, Ex. 1.) The discovery cut-off date was on October 28, 2016. (Dkt. No. 58 (Scheduling Order).) It is undisputed that Defendant first disclosed the names of these witnesses on November 26, 2018, which is more than two years after the discovery cut-off date, about 3.5 weeks before the final pretrial conference, and about six weeks before trial. (*See* Schwegmann Decl. ¶ 3.)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) [requiring party to supplement disclosures and discovery responses], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*" Fed. R. Civ. P. 37(c)(1) (emphasis added); *accord Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements [of disclosure] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly Ltd.*, 259 F.3d at 1107.

### 1.    Whether Defendants Were Required to Supplement Their Disclosures

Defendants argue they were not required to supplement their disclosures because the witnesses were made known to Plaintiff during depositions or in writing.

While "supplemental initial disclosures are not required where the subject witnesses are otherwise disclosed during the discovery process or in writing," such witnesses "must be adequately disclosed." *Finjan, Inc. v. Proofpoint, Inc.*, No. 3:13-cv-05808-HSG (HRL), 2015 WL 9900617, at *2 (N.D. Cal. Oct. 26, 2015). The mere mention of a witness name in a deposition or document is generally not sufficient to meet this standard. *See Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW (MEJ), 2012 WL 2838431, at *2 (N.D. Cal. July 10, 2012) ("As other courts have recognized, merely mentioning the individual's name at a deposition or in a discovery response may not be enough to put the other party on notice that the individual is being disclosed as a trial witness."); *see also Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW (DMR), 2011 WL 2181200, at *2 (N.D. Cal. June 3, 2011) (striking witnesses from supplemental disclosures because although the deponent testified that the witnesses were employees, she did not testify they had any information related to the case and a subsequent interrogatory response further obscured the role they played); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 343 (S.D. Cal. 2010) ("Certainly the mere mention of a name in a deposition is insufficient to give notice to the opposing party that defendants intend to present that person at trial."). Instead, the party offering the witness must demonstrate how the discovery process disclosed that the witness was likely going to be called at trial. *See, e.g., Finjan, Inc.*, 2015 WL 9900617, at *3 ("[A]t most, defendants' initial and supplemental . . . contentions and . . . disclosures identified references that defendants find important. They do not provide sufficient notice that Ross and Kennedy might be called as witnesses. The Ross and Kennedy references were only two of hundreds of references disclosed, and defendants do not convincingly explain how Finjan was to deduce from those disclosures that defendants would call Ross and Kennedy at trial."). The Court will address each witness in turn.

### a.    Shaoying ("Carl") You[2]

Defendants contend that Plaintiff produced documents containing correspondence between Chinacast's Chief Executive Officer Derek Feng and Mr. You and that these emails "were discussed extensively" during Douglas Woodrum's deposition. (Dkt. No. 118 (hereinafter, "Opp'n to MIL No. 2") at 6.)

---

[2] In Defendants' Amended Witness list, Defendants indicate that Shaoying You "will be called only if the need arises." (Dkt. No. 120.) It is unclear what Defendants mean by "if the need arises." To the extent Defendants intend to call Mr. You for impeachment purposes, the motion is denied.

Defendants attached excerpts of deposition testimony of Mr. Woodrum, who testified as Chinacast's representative under Federal Rule of Civil Procedure 30(b)(6). (Dkt. No. 118-1, Declaration of Brian Neach ("Neach Decl.") ¶ 2, Ex. 1.) The transcript indicates that Mr. Woodrum met with Defendant Chen and "Carl" You during the summer of 2012 "to try and understand the ownership of the school, HIUBC." (*Id.* at 22.) Mr. Woodrum stated Mr. You is, or at least was, an employee of Chinacast. (*Id.*) Defendants have also attached an email that Mr. You sent to Mr. Feng on December 4, 2012, which states Defendant Chen "was approached and fooled by Ron [Chan] by the idea of exchanging the school with ChinaCast shares before, how can we persuade him to do so again?"  (Neach Decl. ¶ 4, Ex. 3.)

In light of the Mr. You's emails, as well as the deposition testimony of Mr. Woodrum, the Court finds that Plaintiff was put on notice that Defendant would call Mr. You as a witness. As Defendants point out, these emails suggest Mr. You and Chinacast were aware that Chan "fooled" Defendant Chen into exchanging HIUBC for Chinacast shares.

Therefore, the Court declines to exclude defense witness Shaoying You.

### b.    Xu Jianlin

Defendants contend Xu Jianlin was a shareholder of Jiyang, which owned and operated HIUBC. (Opp'n to MIL No. 2 at 6.)   Defendants argue Plaintiff cannot "credibly claim ignorance" because this witness was identified in two documents: (1) the share transfer agreement regarding the transfer of Jiyang, which Defendant Chen was questioned on at his deposition (Neach Decl. ¶¶ 5-6, Exs. 4-5) and (2) a Chinese government document showing the ownership transfers of Jiyang, which Defendant Chen was questioned on at his deposition. (Neach Decl. ¶¶ 6-7, Exs. 5-6.)

At the final pretrial conference, defense counsel also provided the Court with excerpts of Chen's October 19, 2016 deposition testimony[3] in which Chen identifies Jianlin as a minority shareholder of Jiyang. While the deposition testimony indicates that Jianlin was a minority shareholder of Jiyang, it also indicates that Jianlin was not involved in the negotiations between Chen and Chan and that Jianlin gave Chen authorization to negotiate on his behalf. Therefore, even though Jianlin's name is on the share transfer agreement and Chinese government document and Chen identified Jianlin at his deposition, there was no reason for Plaintiff to believe Defendants would call Jianlin as a witness at trial.

---

[3] Plaintiff also urged the Court to consider this excerpt of Chen's deposition testimony. Given the absence of any objections to this new evidence, the Court will consider it.

Accordingly, the Court finds Xu Jianlin was not disclosed as a witness during discovery or in writing and that Defendants were required to supplement their disclosures as to Jialin.

### c.    Wan Ming

Defendants contend Wan Ming is an attorney who was involved in litigation that Chinacast instituted in China and in which Defendant Chen was involved. (Opp'n to MIL No. 2 at 2; Neach Decl. ¶¶ 8-9, Exs. 7-8.) Defendants contend the relevance of Ming's testimony was not clear until "a late stage in this case" because the litigation in the other case "did not become final until September 2016, just a few months before this Court granted Defendants' motion for summary judgment." (Opp'n to MIL No. 2 at 2.)

The fact that Wan Ming is an attorney involved in other Chinacast litigation does not provide sufficient notice that Ming would be called as a witness in this case. Therefore, the Court finds that Defendants were required to supplement their disclosures as to Wan Ming.

### 2.    Whether Defendants' Failure to Disclose Witnesses Was Substantially Justified or Harmless

By untimely disclosing Wan Ming and Xu Jianlin, Defendants violated Rule 26. However, if Defendants' failure was substantially justified or harmless, the testimony of Ming and Jianlin may nevertheless be admitted.

The Court concludes that Defendants' failure to disclose Jianlin and Ming was not harmless or substantially justified. Plaintiff's attorneys should not have to investigate and prepare for testimony of a previously undisclosed witness less than two months before trial and more than two years after the discovery cut-off date. "Having to commit any amount of trial preparation on late-disclosed discovery materials is, in itself, a harm." *Yowan Yang v. ActioNet, Inc.*, No. CV 14-00792-AB (PJWx), 2016 WL 8929250, at *9 (C.D. Cal. Feb 19, 2016).

Defendants' late disclosure is not justified as to Ming because the litigation instituted by Chinacast in China was apparent on September 13, 2016 when a decision was issued in that case. The Court notes that had Defendants disclosed Ming in September 2016, Plaintiff could have deposed Ming prior to the October 28, 2016 discovery cut-off date. (Dkt. No. 58 (Scheduling Order).) In their opposition, Defendants explain that the decision in that case was issued "barely more than two months before Defendants filed their motion for summary judgment" and that "[t]here would have been little relevance to the decision until it became final." (Opp'n to MIL No. 2 at 7.) The Court is unpersuaded that under these circumstances, "[i]t was understandable that Defendants did not supplement their initial disclosures regarding the decisions." (*Id.*)

Defendants have provided no justification for Defendants' failure to disclose
Jianlin and the Court is aware of none.

Accordingly, the **GRANTS** Plaintiff's Motion in Limine No. 2 as to Wan Ming
and Xu Jianlin.

## V.    CONCLUSION

Plaintiff's Motion in Limine Number 1 and Number 2 are **GRANTED** in part and
**DENIED** in part. Defendant is precluded from calling Wan Ming and Xu Jianlin as
witnesses except for impeachment purposes.


**IT IS SO ORDERED.**